FILED

2014 Jul-22  PM 05:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| MICHAEL ROLLINS | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 4:13-CV-1979-VEH** |
| | ) |
| CAROLYN COLVIN, ACTING | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Michael Wayne Rollins ("Mr. Rollins") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Supplemental Security Income ("SSI").[1] Mr. Rollins timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB"). However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

§ 405(g).[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Rollins was 45 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (Tr. 35). He has completed the seventh grade. (Tr. 53). His past work experience includes employment as a truck driver and tree-cutter. (Tr. 39). He first claimed he became disabled on January 1, 2002, but, on May 8, 2012, amended his claim to state that he became disabled on June 1, 2011, due to chronic obstructive pulmonary disease ("COPD"), back pain, carpel tunnel syndrome, osteoporosis, migraines, and bipolar disorder with psychotic features. (Tr. 36, 148). His last period of work ended in the second quarter of 2011. (Tr. 140).

On April 15, 2010, Mr. Rollins protectively filed a Title XVI application for SSI. (Tr. 20). On October 19, 2010, the Commissioner initially denied this claim. *Id.* Mr. Rollins timely filed a written request for a hearing on November 5, 2010. *Id.* The ALJ conducted a hearing on the amended claim on May 8, 2012. *Id.* On June 12, 2012, he issued his opinion concluding Mr. Rollins was not disabled and denying him benefits. (Tr. 28). Mr. Rollins timely petitioned the Appeals Council to review the decision on July 9, 2012. (Tr. 14). On August 23, 2013, the Appeals Council issued

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

a denial of review on his claim. (Tr. 1).

Mr. Rollins filed a Complaint with this court on October 25, 2013, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 19, 2014. (Doc. 8). Mr. Rollins filed a supporting brief (Doc. 11) on April 14, 2014, the Commissioner responded with her own (Doc. 12) on May 13, 2014, and Mr. Rollins filed a reply brief (Doc. 13) on May 19, 2014. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial

evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for supplemental security income, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 26, 2014.

and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)    whether the claimant can perform his or her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After his review of the record, the ALJ made the following findings:

1.  Mr. Rollins had not engaged in substantial gainful activity ("SGA") since June 1, 2011, the alleged disability onset date.

2.  Mr. Rollins had the following severe impairments: chronic obstructive pulmonary disease; degenerative joint disease of the thoracic spine; degenerative joint disease of the lumbar spine; osteoarthritis; status post fracture of the right wrist; migraine headaches; and low average intelligence quotient.

3.  Mr. Rollins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.  Mr. Rollins had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with abilities, limitations, and restrictions to include the following: occasionally climb ramp and stairs; frequently balance, stoop, kneel, and crouch; occasionally crawl; no exposure to ladders, ropes, or scaffolds; avoid concentrated exposure to extreme heat, extreme cold, and irritants; avoid all hazardous machinery and unprotected heights; limited to simple, unskilled work; occasional interaction with coworkers and supervisors; and instructions must be given without the requirement of reading.

5.  Mr. Rollins was unable to perform any past relevant work.

6.  Mr. Rollins was 44 years old, which is defined as a younger individual age 18-49, on his alleged disability date.

7.  Mr. Rollins had limited education and was able to communicate in English.

8.  Transferability of job skills was not an issue because Mr. Rollins's past relevant work was unskilled.

9.     Considering Mr. Rollins's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

10.    Mr. Rollins had not been under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of this decision.

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Rollins urges this court to reverse the Commissioner's decision to deny his benefits on these grounds:

(1) the ALJ had a duty to order a consultative psychiatric examination;

(2) the ALJ substituted his opinion for that of Mr. Rollins's treating physician;

(3) the ALJ's finding that Mr. Rollins had SGA as a truck driver was not

---

[4]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

7

supported by substantial evidence;

(4) the ALJ's determination of Mr. Rollins's RFC and the denial of benefits were not supported by substantial evidence;

(5) the ALJ's finding that Mr. Rollins is not credible was neither supported by substantial evidence nor adequately explained.

(Doc. 11 at 2).The court rejects these grounds for appeal, and instead finds that the ALJ applied the proper legal standards and that his decision was supported by substantial evidence.

## I.    The ALJ Was Not Required To Order A Second Consultative Psychiatric Exam.[5]

The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R § 404.1519a(b). When the record does contain sufficient evidence to make an informed decision, the ALJ is not required to order a consultative examination. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) ("[T]he [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision." (citing *Ford v. Secretary of*

---

[5]The undersigned has rendered a comparable decision from which the framework, analysis, and disposition of this section, in part, persuasively flow. *See Kyle v. Colvin*, No. 4:12-CV-03556-VEH, 2013 WL 6800631, at *6 (N.D. Ala. Dec. 20, 2013).

8

*Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981))). Sufficient evidence does not mean "absolute certainty" regarding a claimant's condition; the Social Security Act "requires only substantial evidence." *Id.* at 1210.

Mr. Rollins argues that the administrative record does not contain sufficient evidence for the ALJ to have made an informed decision regarding his diagnosis of bipolar disorder, and that the ALJ should have ordered an additional consultative examination to properly assess that condition. (Doc. 11 at 15). This court disagrees. The ALJ addressed Mr. Rollins's bipolar diagnosis, stating:

> In addition to alcohol abuse, the claimant has been diagnosed with bipolar disorder ... There is no indication that the bipolar disorder has lasted, or [is] expected to last, for 12 months therefore it does not meet the 12 month durational requirement ... Moreover, the consultative examiner did not diagnose the bipolar disorder in September 2010. In addition, neither has resulted in documented impairment-caused limitation of function and they are, therefore, nonsevere impairments as a matter of law.

(Tr. 23) (citations omitted). The ALJ's decision to accord more weight to the evidence which shows Mr. Rollins's bipolar disorder to be insufficient in duration and non-severe, including the reliance on an examining psychologist's opinion, was supported by substantial evidence.

This case is distinguishable from the decisions cited in Mr. Rollins's brief. (Doc. 11 at 15-17). For example, no medical source indicated that further testing or

examination was necessary to evaluate Mr. Rollins's mental condition, unlike the situation in *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) ("[T]he ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an examination. "). Also, the ALJ addressed Mr. Rollins's bipolar disorder and explained his reasons for finding the impairment to be non-severe, unlike in *Ford*, 659 F.2d at 69 ("The [ALJ] failed to make an express factual finding with regard to the severity of appellant's alleged mental impairment and failed to specify his reasons for denying appellant's request for a consultative psychiatric examination ... the [ALJ] failed to fulfill his duty.").

Mr. Rollins's citation to *Holladay* is puzzling because the Eleventh Circuit actually upheld the ALJ's refusal to order a new examination, finding that substantial evidence supported the ALJ's conclusion, and that insisting upon absolute certainty was inconsistent with the substantial evidence standard. *See Holladay* 848 F.2d at 1210 ("Yet the statute does not require absolute certainty; it requires only substantial evidence ... the absence of an arteriogram did not render the ALJ incapable of making an overall disability determination.").

Finally, while Mr. Rollins is correct that the Eleventh Circuit requires an ALJ to make "every reasonable effort" to obtain the opinion of "a qualified psychiatrist or psychologist" if there is evidence indicating the existence of a mental impairment,

*McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988), the ALJ already did just that in this case, through the report of Dr. June Nichols ("Dr. Nichols"), the first consultative examiner. Because of this sufficient development of the record, the ALJ was under no obligation to order a second consultative examination.

## II.   The ALJ Did Not Improperly Disregard The Opinion Of Mr. Rollins's Treating Physician.

An ALJ must accord the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003). Furthermore, an ALJ "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"Treating source" is defined at 20 C.F.R. § 416.902:

Treating source means your own physician ... who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you ...We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals ... if the nature and frequency of the treatment or evaluation is typical for your condition(s).

*Id.* Although there is no specific number of times that a claimant must visit a physician for that doctor to be a treating source, the relationship must be or have been ongoing; a single meeting cannot be sufficient. *See T.R.C. ex rel. Boyd v.*

*Commissioner, Social Sec. Admin.*, 553 F. App'x 914, 917 (11th Cir. 2014) ("The examiners ... met with T.R.C. on only one occasion, and did not have any 'ongoing treatment relationship' with her sufficient to accord them status as treating physicians."); *see also Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1303 (S.D. Fla. Mar. 6. 2012) (holding that a doctor who saw the claimant twice had no ongoing treatment relationship). The court's own research has been unable to find a published Eleventh Circuit ruling on this issue, but finds these opinions persuasive, as they are supported by the reasoning underlying the deference to treating physicians. *See* 20 C.F.R. § 416.927(d)(2)(I) ("When a treating source has seen you a number of times and long enough to have formed a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source."). The regulation assumes that a treating source will have seen a claimant "a number of times" rather than just once; a "longitudinal picture" is impossible to achieve with only a single examination. *Id.*

Mr. Rollins identifies Dr. Pat Herrera ("Dr. Herrera") as his treating physician, and argues that the ALJ improperly disregarded his medical opinion. (Doc. 11 at 18). The administrative record, however, contains only one report relating to Dr. Herrera, which contains no indication of how many times Dr. Herrera saw Mr. Rollins, and which fails to substantiate an ongoing relationship. (Tr. 278). Furthermore, that report

is merely a form document filled out by Dr. Herrera for the purpose of Mr. Rollins's disability claim, indicating a lack of a serious, ongoing treatment relationship. *See* 20 C.F.R. § 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is based ... solely on your need to obtain a report in support of your claim for disability."); *see also Robinson v. Astrue*, No. 2:09-CV-01862-VEH, (Doc. 12 at 9) (N.D. Ala. Oct. 29, 2010) ("[T]he ALJ discredited Dr. Elrefai's opinion because it was a pre-printed form in which Dr. Elrefai...checked boxes."). Despite this issue being raised by the Commissioner in her brief (Doc. 12 at 8), Mr. Rollins did not present any other evidence or arguments to show an ongoing treatment relationship with Dr. Herrera in his reply brief. (Doc. 13).

Thus, Dr. Herrera cannot be classified as Mr. Rollins's treating physician, and the ALJ did not have a heightened duty to articulate his reasons for partially discounting Dr. Herrera's opinion. As there is no special deference due to Dr. Herrera's opinion as a non-treating physician, the ALJ's reasoning for partially discounting Dr. Herrera's opinion was sufficient and based on substantial evidence.

Alternatively, even if Dr. Herrera is considered to be Mr. Rollins's treating physician, the ALJ provided good grounds to discount Dr. Herrera's opinion. *See Lewis*, 125 F.3d at 1440 ("We have found 'good cause' [to disregard a treating source] to exist where the doctor's opinion was not bolstered by the evidence, or

where the evidence supported a contrary finding."). The ALJ explained the limited weight he accorded to Dr. Herrera's opinion, stating:

> Partial weight is also given to Dr. Herrera because the claimant's activities of daily living mowing and tree cutting rule out limits in pushing/pulling as indicated by the doctor on the form he completed for the claimant's attorney. However, as noted above, neither the diagnostic imaging nor the claimant's treatment records support Dr. Herrera's findings that the claimant suffers pain such that he would be unable to engage in competitive work.

(Tr. 26). The ALJ's explanation for only partially crediting Dr. Herrera's opinion is consistent with the Eleventh Circuit's treating physician rule and does not warrant reversal on appeal.

## III.   The ALJ's Finding Of Mr. Rollins's SGA As a Truck Driver, If Error, Was Harmless.

The ALJ found that Mr. Rollins had SGA as a truck driver prior to his amended onset date, but ultimately determined that he did not have the RFC to perform that work. (Tr. 26). The ALJ also mentioned Mr. Rollins's experience as a truck driver in his hypothetical question to the vocational expert ("VE"), but the potential jobs identified by the VE (*e.g.* silverware wrapper) were all unskilled, and did not depend upon Mr. Rollins's experience as a truck driver. (Tr. 64-65). Because the ALJ's reference to Mr. Rollins's SGA as a truck driver did not materially affect the VE's opinion or the ALJ's decision to deny benefits, that potential error is not a cause for

reversal. *See Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) ("Even though the hypothetical made Battle seem more educated than he actually is, the mistake is harmless because it did not affect the VE's conclusion."); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("When, however, an incorrect application of law results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." (citing *Dioro v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983))). Thus, consistent with *Battle*, *Caldwell*, and *Dioro*, to the extent that the ALJ incorrectly found that Mr. Rollins had SGA as a truck driver, such error was harmless and does not support a reversal of the Commissioner's decision.

## IV.   The ALJ's Assessment Of Mr. Rollins's RFC Was Based On Substantial Evidence And His Questions To The Vocational Expert Based Upon That RFC Were Without Error.

Mr. Rollins contends that the RFC determined by the ALJ is not supported by substantial evidence because it does not reflect the bipolar disorder diagnosis by the C.E.D. Mental Health Center (the "CED") (Tr. 269) and certain physical limitations indicated by Dr. Herrera (Tr. 276) (Doc. 11 at 26). Specifically, Mr. Rollins suggests that the functional capacity evaluation completed by Single Decisionmaker Alvin Rowell ("Mr. Rowell") (Tr. 73) and the psychiatric review by Dr. Robert Estock ("Dr. Estock") (Tr. 239) cannot constitute substantial evidence in support of the ALJ's RFC

determination because the subsequent evaluations of Mr. Rollins by the CED and Dr. Herrera invalidate those underlying pieces of evidence. (Doc. 11 at 27).

Turning first to Mr. Rollins's mental RFC, the ALJ addressed the bipolar disorder diagnosis by the CED, and adequately explained that any impairment from that condition did not meet the durational or severity requirements (Tr. 23), as discussed *supra* at 8-11. The ALJ explained that the psychiatric review by Dr. Estock, which did not incorporate the CED evaluation, was "consistent with the weight of the evidence which shows no previous diagnosis of mental impairment and treatment until March 2012." (Tr. 26). Additionally, the ALJ relied partially upon Dr. Nichols's consultative examination and opinion, which lacked a diagnosis of bipolar disorder and indicated that Mr. Rollins's mental impairments would not prevent him from "remember[ing], carry[ing] out, and understand[ing] work instructions." (Tr. 26, 236-38). Further, Dr. Nichols is a clinical psychologist (Tr. 238), whereas the evaluation from the CED was conducted by a non-doctor therapist on March 2, 2012, whose report was then approved by a "Medical Doctor or Licensed Psychologist" on March 9, 2012. (Tr. 269, 275).

More specifically, psychologists are listed as "acceptable medical sources" who can "establish whether you have a medically determinable impairment(s)." 20 C.F.R. § 416.913(a)(2). Therapists, on the other hand, are categorized as "other

16

sources" who can show "the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 416.913(d)(1).

The expertise of the person who actually performed the examination of the claimant is critical to the value of that resulting report. *Cf.* 20 C.F.R. § 416.919n(e) ("All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination."). Thus, the ALJ was entitled to accord more weight to Dr. Nichols's medical opinion than to the report from the CED which was merely generated by a therapist and subsequently signed by a doctor. *Cf. Freeman v. Barnhart*, 220 F. App'x 957, 961 (11th Cir. 2007) ("[His] opinion is entitled to less weight than the opinions of medical doctors because he is a physical therapist."). The court finds the *Freeman* decision to be persuasive and analogous to the present case, and has similarly held. *See Vaughn v. Colvin*, No. 4:12-CV-1793-VEH, 2013 WL 5519680, at *5 (N.D. Ala. Sept. 30, 2013) ("Dr. Walker, as a 'licensed professional counselor' ... was not an 'acceptable medical source' under the Regulations ... The ALJ was thus free to discount Dr. Walker's assessment.") (citations omitted).

Likewise, the ALJ's physical RFC is not invalidated by Dr. Herrera's opinion. Instead, the RFC was consistent with several parts of Dr. Herrera's physical assessment of Mr. Rollins. Such similarities include findings that Mr. Rollins can sit

17

or stand for over six hours in a work day, and that he can frequently lift objects weighing ten pounds. (Tr. 73, 276-77). This is in accordance with the definition of light work. *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time ... with some pushing and pulling").

Mr. Rollins maintains that the ALJ erroneously disregarded the additional job-related restrictions that Dr. Herrera found to be appropriate within the category of light work given the VE's testimony. More specifically, the VE testified that Mr. Rollins would be unable to perform the potential light jobs which the VE identified if the vocational impact of his physical impairments meant that he could only occasionally:[6] (1) have full use of both hands and (2) push and pull. (Tr. 65-67).

Dr. Herrera's assessment shows that Mr. Rollins's hand use is only vocationally restricted in a minimal manner. (Tr. 277 § 8). For example, he indicated that Mr. Rollins can use both of his hands for simple grasping, fingering, handling, and fine manipulation "FREQUENTLY," only one level down from the least restrictive category of "CONSTANTLY" and one a step above the critical classification of "OCCASIONALLY." *Id.* Comparably, the ALJ found no job-related restrictions caused by Mr. Rollins's right hand impairment, and the ALJ did not

---

[6]As defined in Dr. Herrera's report, "Occasionally" "[e]quals 0% to 33% [or] (1-2 hours)" in an 8 hour workday. (Tr. 276).

commit any error in this regard.

The ALJ and Dr. Herrera did dramatically disagree in their assessment of Mr. Rollins's ability to push and pull. Dr. Herrera opined that Mr. Rollins can only use his arms, hands, legs, and feet for pushing and pulling "OCCASIONALLY." (Tr. 277 §§ 4-5). The ALJ, in contrast, did not include any restrictions related to pushing and pulling in formulating Mr. Rollins's RFC. However, the ALJ did express adequate reasons to accord only partial weight to Dr. Herrera's opinion (Tr. 26), as discussed *supra* at 11-14, and thus was not required to adopt <u>all</u> of the physical restrictions found by Dr. Herrera to be appropriate.

For example, the ALJ justified his physical RFC assessment (and departure from some of Dr. Herrera's findings) in part by referencing Mr. Rollins's testimony about his work and daily activities (such as tree-cutting with a chain saw and lawn-mowing), which tend to corroborate that pushing and pulling are not significant problems for him. (Tr. 46-47, 225). Inconsistency with a claimant's testimony is good cause for an ALJ to disregard a medical opinion. *See Phillips*, 357 F. 3d at 1241 ("'[G]ood cause' exists when ... evidence supports a contrary finding ... The ALJ concluded that this assessment was ... contrary to Phillips's admissions concerning her activities." (citing *Lewis*, 125 F.3d at 1440)).

Further, the ALJ's physical RFC was substantially supported by the medical

opinion of Dr. Henry Born ("Dr. Born").[7] (Tr. 25-26). Although Dr. Born did not directly discuss some of the functional components which the ALJ's physical RFC assessment included, he did provide a detailed analysis of Mr. Rollins's physical status from which the ALJ could, in conjunction with Mr. Rollins's self-reporting on his broad range of activities, draw reasonable conclusions about Mr. Rollins's physical abilities and limitations. (Tr. 224-26); *cf. Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996))); 20 C.F.R. § 416.946(c). ("[T]he [ALJ] ... is responsible for assessing your [RFC].").

Dr. Born's opinion supports the physical RFC assessment formulated by the ALJ, including the conclusions reached regarding Mr. Rollins's ability to push and pull and the slightly restricted use of his right hand. Dr. Born stated in his opinion that:

> [M]uscle strength in the arm and forearm is normal. The deep tendon reflexes are normal ... the intrinsic muscles of the right hand do not seem atrophied as opposed to the left ... He can grasp and hold objects with the right hand ... He has good range of motion at the cervical spine. He

---

[7]The functional evaluation that Mr. Rowell prepared was also primarily based off of Dr. Born's examination of Mr. Rollins. (Tr. 79).

has good range of motion at the shoulders, elbows, left wrist, hand, and
fingers. At the right ... He has some restriction on range of motion. It
hurts to move. His grip strength is diminished. He may have slight
diminution in finger/hand dexterity.

(Tr. 225-26).

In sum, Dr. Herrera's opinion that Mr. Rollins may only occasionally push or
pull with his arms and legs is inconsistent with Dr. Born's findings of normal arm and
forearm strength, only minor deficits in the use of his right hand,[8] and only slightly
restricted leg functioning. (*See also* Tr. 225 ("[L]ower extremities ... muscle strength
is intact. He has pain on straight leg raising at 60 degrees ... has normal range of
motion at the hips, knees, ankles, and feet ... patient's gait is slow.")). At best, Dr.
Born's conclusions substantiate that Mr. Rollins retained the ability to push and pull
more than only occasionally; consequently, the light jobs identified by the VE would
not be eliminated.

Mr. Rollins additionally argues that the ALJ's omission of the CED's diagnosis
of bipolar disorder in his hypothetical questioning of the VE renders the testimony
insubstantial, citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order
for a VE's testimony to constitute substantial evidence, the ALJ must pose a

---

[8]The court notes that, in his report, Dr. Herrera did not make <u>any</u> distinction between the
functionality of Mr. Rollins's left versus right hand. He also expressly rated Mr. Rollins's ability to
push and pull from both his left <u>and</u> right arms and hands, equally, as "OCCASIONALLY." (Tr. 277
§ 4). This similarity in assessment is inconsistent with the record's indication that only Mr. Rollins's
right hand has functional restrictions.

hypothetical question which comprises all of a claimant's impairments.").[9] However, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *see also Vaughn v. Colvin*, No. 4:12-CV-01793-VEH (Doc 15 at 17) (N.D. Ala. Sep. 30, 2013) ("In light of Dr. Davis's evaluation, this hypothetical is adequately comprehensive."). As explained above, the ALJ properly rejected the bipolar diagnosis by the CED when formulating Mr. Rollins's overall RFC. Therefore, the ALJ's reliance upon the VE's responses to hypothetical questions that are consistent with that RFC does not warrant reversal on appeal.

## V.   The ALJ's Assessment Of Mr. Rollins's Credibility Was Based On Substantial Evidence.

The Eleventh Circuit's pain standard "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The pain standard requires "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity

---

[9]Mr. Rollins also objects to the hypothetical question posed to the VE on the grounds that it wrongly described him as having had SGA as a truck driver, and because it did not convey the severe pain described by Mr. Rollins and Dr. Herrera. The harmlessness of the potential error regarding the truck driving SGA has been discussed *supra* at 13-14, and the ALJ's adequately-reasoned disregard of Mr. Rollins's pain is discussed *infra* at 22-25.

that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Even if a claimant meets the pain standard, the ALJ may then evaluate the intensity, persistence, and limiting effects of the pain or other alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(1). Applying this pain standard to the present case, the ALJ found that medical signs and laboratory findings depict medical impairments that could reasonably be expected to produce the alleged symptoms. (Tr. 25). However, the ALJ determined "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id*.

The ALJ may reject a claimant's complaints of pain if he has good reason to doubt their credibility. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence.").The ALJ may not discredit a claimant without clearly explaining his reasons for doing so. *See Foote*, 67 F.3d at 1561 ("If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so.").

Further, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity

of impairment than can be shown by objective medical evidence alone." 20 C.F.R. §

416.929(c)(3). This "other evidence" includes statements made by the claimant in

testimony during administrative hearings concerning the claimant's restrictions, daily

activities, frequency and intensity of symptoms, any precipitating and aggravating

factors, medication taken and any resulting side effects, and any other measures taken

to alleviate the symptoms. *Id*.

Here, the ALJ discredited Mr. Rollins's testimony as to the intensity of his

symptoms with adequate reasoning. *See* 20 C.F.R. § 416.929(c)(4). ("We will

consider ... the extent to which there are any conflicts between your statements and

the rest of the evidence"). In explaining his negative credibility finding, the ALJ

stated:

> [T]he claimant's statements and other allegations concerning the
> intensity, persistence, and limiting effects of these symptoms are not
> credible to the extent they are inconsistent with the above [RFC]
> assessment. For example, the claimant is still independent in his
> activities of daily living, including chores and shopping. He reported
> that he still does occasional treecutting work for people and that he cuts
> his aunt's lawn using a riding lawnmower ...physical examination by Dr.
> Born showed that claimant can grasp and hold object with his right hand
> and there is no evidence of atrophy of the muscles ...even Dr. Herrera
> opined that the claimant would be capable of some work at the light and
> medium levels of exertion ... By self-admission, he has a moderately
> active lifestyle and actually earned [SGA] driving a dump truck as
> recently as 2011.

(Tr. 26). The tree-cutting referred to by the ALJ required several hours of exertion

24

(Tr. 47), yet Mr. Rollins stated that he could sit for no more than thirty minutes at a time (Tr. 43), stand for no more than twenty minutes at a time (Tr. 42), and walk for no more than fifteen minutes at a time. (Tr. 44). Mr. Rollins also claimed that he cannot effectively grip with his right hand (Tr. 46).

Mr. Rollins argues that the ALJ's reliance on Mr. Rollins's testimony about his own daily activities improperly characterizes him as not being disabled. (Doc. 11, 32-33). The mere fact that a claimant is able to perform some basic activities does not mean that he or she is not disabled. *See Lewis*, 125 F.3d at 1441 ("Nor do we believe that participation in everyday activities of short duration, such as household chores or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."). However, the ALJ did not base his disability determination merely on Mr. Rollins's ability to do only <u>some</u> daily activities.

Instead, the ALJ properly considered Mr. Rollins's ability to perform the demanding, and far from basic, activity of tree-cutting, as well as other activities, in only partially crediting his subjective level of pain. *See Moore*, 405 F.3d at 1212 ("[T]he ALJ here relied on the inconsistencies between Moore's descriptions of her diverse daily activities and her claims of infirmity."); *see also Miller v. Colvin*, No. 5:11-CV-04000-VEH, 2013 WL 1346705, at *9 (N.D. Ala. Mar. 28, 2013) ("In this

25

case, Miller's daily activities, when considered with the record as a whole, reasonably support the ALJ's negative credibility finding."). By straightforwardly showing activity-related contradictions with Mr. Rollins's claimed level of pain, the ALJ satisfied his burden for partially discrediting him. *See Foote,* 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by the reviewing court" (citing *MacGregor v. Bowen*, 814 F.2d 585, 588-590 (11th Cir. 1987))).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this the 22nd day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

26